UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22983-CIV-JORDAN/McALILEY

BAYWIND HOLDINGS, INC.,
a foreign corporation,

       Plaintiff,

vs.

CESSNA FINANCE CORPORATION,
a foreign corporation,

       Defendant.
_____/

## AMENDED VERIFIED COMPLAINT FOR DAMAGES

    Plaintiff, BAYWIND HOLDINGS, INC., (hereinafter referred to as "Plaintiff"), by and

through its undersigned counsel, hereby sues the defendant, CESSNA FINANCE CORPORATION,

(hereinafter referred to as "Defendant and/or Cessna"), through this Amended Verified Complaint for

Damages,1 and in support thereof states the following:

### I. JURISDICTION, PARTIES AND VENUE

   1. This is an action for damages within the jurisdiction of this court, as the amount in

controversy exceeds the sum of $75,000.00, exclusive of interest, costs and attorneys fees, and is

between a citizen of a State and a citizen or subject of a foreign state, pursuant to 28 U.S.C.

§1332(a)(2).

   2. Plaintiff is a foreign corporation organized and existing under the laws of the British Virgin

Island for diversity purposes, under 28 U.S.C. §1332(c)(1), which, at all material times hereto, was

_____

1 The only amendment to the original Complaint is that the present contains a Verification Page.

duly registered and authorized to conduct business in the State of Florida, and within this Judicial District.

3.   Defendant is a national corporation organized and existing under the laws of the State of Kansas, which regularly conducts business in the State of Florida and is subject to Florida's long-arm statute, for diversity purposes under 28 U.S.C. §1332(c)(1).

4.   Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(c) because it is a corporation and is subject to personal jurisdiction in the State of Florida under Florida's long-arm statute at the time the action is commenced.

5.   All conditions precedent to defendant's liability have occurred, been performed or have been waived.

## II.  FACTUAL BACKGROUND

6.   On or about September 18, 2000, Defendant and a Brazilian company called Remar Administracao e Comercio, S/A, (hereinafter referred to as "Remar"), signed an Aircraft Lease Agreement, attached hereto as Exhibit "A," as a result of which Remar leased a certain Cessna model aircraft (hereinafter referred to as the "Aircraft") from the Defendant.

7.   On or about October 5, 2000, Cessna granted a Florida corporation called Biscayne Key Investments, Inc., (hereinafter referred to as "Biscayne Key"), an option to purchase the Aircraft leased to Remar.  (Hereinafter referred to as "Purchase Option").  (Copy of Purchase Option attached hereto as Exhibit "B").

8.   On or about March 22, 2005, Biscayne Key assigned its Purchase Option to Plaintiff.  (Copy of Assignment attached hereto as Exhibit "C").

9.   On or about January 2008, the Aircraft was confiscated in Brazil by a third party.

2

10. Mr. Roberto Ramenzoni, a Brazilian national, President of Remar, and Director of Biscayne Key, (hereinafter referred to as "Ramenzoni"), informed Cessna's then Manager of International Finance, Mr. David C. Glassner (hereinafter referred to as "Glassner"), of the confiscation and they discussed several options available to Ramenzoni.

11. In order to secure the return of the plane, Glassner, acting within the scope of his authority and employment with Cessna, instructed Remar, through Ramenzoni, to default on the Aircraft lease. This way, according to Glassner, Cessna, as priority lien holder over the Aircraft, could repossess the Aircraft and take it away from the third party who confiscated it.

12. Glassner instructed Remar to default on the Aircraft lease, including, but not limited to, as follows: (a) to stop making the monthly lease payments, (b) to stop paying the insurance and (c) to stop submitting the Aircraft for its yearly maintenance.

13. As inducement and consideration for Remar's default under the lease, Glassner agreed that, upon Cessna's repossession of the Aircraft, Remar, through Ramenzoni, could find a purchaser and offer the Aircraft for sale. This way, Plaintiff and Remar, through Ramenzoni, could benefit from any profits realized from said sale.

14. Additionally, Glassner asked Plaintiff, through Ramenzoni, to agree to terminate the Purchase Option, thereby waiving Plaintiff's right to purchase the Aircraft, in order for the Aircraft to be repossessed by Cessna free and clear of any potential claims, such as the claim that Plaintiff had available through the Purchase Option.

15. On or about April 18, 2007, at Cessna's instructions, through Glassner, Plaintiff terminated its Purchase Option.  (Copy of Termination Letter attached as Exhibit "D").

3

16. Unbeknownst to Plaintiff, however, Cessna wanted Plaintiff to terminate its Purchase Option because Cessna's real intentions were to retain the Aircraft for its own benefit and to deprive the Plaintiff, Remar and Ramenzoni from its share of the profits from the sale of the Aircraft.

17. During this period of time, Remar, through Ramenzoni, purchased another aircraft from Cessna for approximately $12 Million.

18. Cessna eventually proceeded with litigation in Brazil against the third party who confiscated the Aircraft, and was ultimately successful in said litigation in securing the return of the Aircraft to Cessna.

19. Thereafter, based on the agreement between Remar and Cessna, Ramenzoni, on behalf of Plaintiff, found at least two potential purchasers for the Aircraft, to wit: Agrotin and TAM.

20. However, Cessna did not have any real intentions to sell the Aircraft and share the profits with Plaintiff, Remar or Ramenzoni, but, instead, wanted to pocket all profits derived from the sale of the Aircraft.  Therefore, in order to accomplish these intentions, Cessna, through Glassner, engaged in a course of conduct of self-dealing and sabotage in order to prevent the sale of the Aircraft.

21. As part of Cessna's tactics to prevent the sale of the Aircraft, Cessna, through Glassner, sabotaged the sale to Agrotin by making unfounded allegations that Agrotin was using "dirty money" or "laundered money" to purchase the Aircraft.  Thus, ultimately, causing the deal to fall apart.

22. Moreover, Cessna intentionally delayed the sale to TAM thereby causing that deal to fall apart as well.

23. In doing all of the aforementioned, Cessna engaged in a pattern of deception toward Plaintiff, as it deceived Plaintiff into terminating its Purchase Option, thereby, effectively, depriving Plaintiff from the benefit of said option.

24. In fact, had Cessna not deceptively convinced Plaintiff to terminate its Purchase Option, Plaintiff could have easily exercised its option to purchase the Aircraft and profited approximately $1.2 million.

25. Plaintiff has retained undersigned counsel and is obligated to pay reasonable attorneys' fees and costs.

26. All conditions precedent to bringing this action have occurred, been satisfied or waived.

### III.  CLAIM FOR RELIEF

### COUNT I
### BREACH OF CONTRACT

27. Plaintiff realleges and incorporates herein paragraphs 1 through 26 above as if fully set forth herein.

28. Plaintiff and Cessna had a valid written contract, to wit: the Purchase Option.

29. Cessna breached the contract by fraudulently inducing Plaintiff to terminate the Purchase Option, thus causing Plaintiff to lose the benefit of said option.

30. As a result of Cessna's breach, the Plaintiff has been damaged.

WHEREFORE, the Plaintiff demands judgment for damages against the Defendant, and reasonable attorney's fees and costs, as well as any other relief the Court deems just and proper.

### COUNT II
### UNJUST ENRICHMENT

31. Plaintiff realleges and incorporates herein paragraphs 1 through 26 above as if fully set forth herein.

32. By virtue of terminating the Purchase Option, Plaintiff has involuntarily conferred a benefit on Cessna, who has knowledge thereof.

33. Cessna voluntarily accepted and retained the benefit conferred.

34. The circumstances render Cessna's retention of the benefit inequitable unless Cessna pays to Plaintiff the value of the benefit.

35. Cessna has been unjustly enriched at the expense of Plaintiff.

36. Plaintiff is entitled to damages as a result of Cessna's unjust enrichment, including the disgorgement of all monies unlawfully retained by Cessna which are due Plaintiff.

WHEREFORE, the Plaintiff demands judgment against the Defendant, together with pre-judgment interest thereon, and reasonable attorney's fees and costs, as well as any other relief the Court deems just and proper.

## COUNT III
## FRAUD IN THE INDUCEMENT

37. Plaintiff realleges and incorporates herein paragraphs 1 through 26 above as if fully set forth herein.

38. Cessna, through its agent, Glassner, made a false statement to Plaintiff, Remar and Ramenzoni regarding a material fact, to wit: that if Plaintiff terminated its Purchase Option, Cessna would be able to secure the Aircraft free and clear of any potential claims, such as the claim that Plaintiff had available through the Purchase Option, and, upon securing the return of the Aircraft, would allow Plaintiff to thereafter sell the Aircraft.

39. When Cessna made that statement, through its agent, Glassner, Cessna knew or should have known that it was false.

6

40. Cessna, through its agent, Glassner, intended for Plaintiff to rely on the statement.

41. Plaintiff relied on the false statement to its detriment.

WHEREFORE, the Plaintiff demands judgment against the Defendant, together with pre-judgment interest thereon, and reasonable attorney's fees and costs, as well as any other relief the Court deems just and proper.

### COUNT IV
### TORTIOUS INTERFERENCE
### (Agrotin)

42. Plaintiff realleges and incorporates herein paragraphs 1 through 26 above as if fully set forth herein.

43. Plaintiff, Remar and Agrotin had a business relationship for the sale of the Aircraft.

44. Cessna had knowledge of this relationship.

45. Cessna, through Glassner, while within the scope of his employment and as agent for Cessna, intentionally and unjustifiedly interfered with said relationship by making unfounded allegations that Agrotin was using "dirty money" or "laundered money" to purchase the Aircraft, thereby preventing the sale to Agrotin from consummating.

46. As a result of Cessna's actions, Plaintiff has been damaged.

WHEREFORE, the Plaintiff demands judgment against the Defendant, together with pre-judgment interest thereon, and reasonable attorney's fees and costs, as well as any other relief the Court deems just and proper.

### COUNT V
### TORTIOUS INTERFERENCE
### (TAM)

47. Plaintiff realleges and incorporates herein paragraphs 1 through 26 above as if fully set forth herein.

7

48. Plaintiff, Remar and TAM had a business relationship for the sale of the Aircraft.

49. Cessna had knowledge of this relationship.

50. Cessna, through Glassner, while within the scope of his employment and as agent for Cessna, intentionally and unjustifiedly interfered with said relationship by delaying the sale to TAM, thereby preventing the sale to TAM from consummating.

51. As a result of Cessna's actions, Plaintiff has been damaged.

WHEREFORE, the Plaintiff demands judgment against the Defendant, together with pre-judgment interest thereon, and reasonable attorney's fees and costs, as well as any other relief the Court deems just and proper.

### IV.  DEMAND FOR JURY TRIAL

Plaintiff demands a trial by a jury on all issues so triable by a jury.

DATED this 18th day of December, 2009.

Respectfully submitted,

LAW OFFICES OF DAVID M. GOLDSTEIN, P.A.
*Counsel for Plaintiff*
286 N.E. 39th Street
Miami, FL 33137
Telephone: (305) 372-3535
Fax: (305) 577-8232

By: _____David M. Goldstein_____
DAVID M. GOLDSTEIN
Florida Bar No.  156003
E-mail: david@dmgpa.com

8



## **VERIFICATION PAGE**

**BEFORE ME**, the undersigned authority, personally appeared Flavio Sogayar, Jr., as authorized representative and agent of Baywind Holdings, Inc., who, upon being first duly sworn and who is personally known to me, or produced a Passport, Number CV312849, as identification, acknowledged before me that the facts and allegations stated in this Verified Complaint are true and correct to the best of his knowledge and belief.

WITNESS my hand and official seal, at Miami, County of Miami-Dade, Florida, this ___ day of _____, 2009.

NOTARY PUBLIC, STATE OF FLORIDA
Sherrie Hurd
Commission # DD488506
Expires: NOV. 19, 2009

_____
NOTARY PUBLIC, State of Florida
Printed Name: _____
Commission Number: _____
My Commission Expires: _____

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of December, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on counsel of record identified on the following Service List, via transmission of Notices of Electronic Filing generated by CM/ECF, facsimile, e-mail and/or U.S. Mail.

### Service List

Annette C. Escobar, Esq.
Astigarraga Davis Mullins & Grossman, P.A.
701 Brickell Ave., 16th FL
Miami, FL  33131
Tel.:    (305) 372-8282
Fax:    (305) 372-8202
aescobar@astidavis.com

Edward H. Davis, Jr., Esq.
Astigarraga Davis Mullins & Grossman, P.A.
701 Brickell Ave., 16th FL
Miami, FL  33131
Tel.:    (305) 372-8282
Fax:    (305) 372-8202
edavis@astidavis.com

BENEDICTO LÁZARO DOS SANTOS
ESCREVENTE DO 1.0
REGISTRO DE IMÓVEIS
E ANEXOS DE LIMEIRA - SP
REGISTRO DE TÍTULOS
E DOCUMENTOS

1º REGISTRO DE TÍTULOS E DOCUMENTOS
LIMEIRA - SP 53884
Registrado em microfilme sob nº _____

**Cessna Finance Corporation**

A Textron Company

Cessna Finance Corporation

AIRCRAFT LEASE

Number  00-P1119

THIS LEASE AGREEMENT is made and entered into at Wichita, Kansas, as of the 18th day of September, 2000, by and between CESSNA FINANCE CORPORATION, a U. S. company organized and existing under the laws of Kansas, with head offices at 220 West Douglas, Suite 300, in the City of Wichita, Kansas 67201-0308, as Lessor, hereinafter called "OWNER," and Remar Administracao e Comercio S/A. , a Brazilian company registered with the General Taxpayers Registry under no. 03.338.685/0002-50 , with head offices at Rodovia Mato Grosso do Sul, 395, KM6,5 Sala 1 , in the city of Brasilandia , MS 79670-00 , Brazil, hereinafter called "LESSEE."

W I T N E S S E T H: That,

1.    THE LEASED AIRCRAFT. OWNER leases to LESSEE and LESSEE leases from OWNER, upon the terms and conditions herein contained, the following described new aircraft, all standard equipment as defined by the manufacturers' specifications, all optional equipment listed on Annex A, all engine and airframe logbooks for or relating to the aircraft, and all additions thereto and replacements or substitutions therefor, all of the foregoing items (including, without limitation, all additions thereto and replacements or substitutions therefor) being herein referred to as the "Aircraft:"

| | |
|---|---|
| Cessna Model | 525 |
| Serial No. | 525-0403 |
| Reg. No. | PT-PRR |
| Engine(s) Make & Model | Williams-Rolls FJ44-1A |
|     Serial No. LH | 1819 |
|     Serial No. RH | 1814 |

1.1    OWNER either owns the Aircraft on the date hereof or will purchase the Aircraft on or before the date the Aircraft is actually delivered to LESSEE; provided, however, that OWNER shall have no obligation to purchase the Aircraft or lease it to LESSEE if the Purchase Order between LESSEE and the Cessna Aircraft Company is terminated or canceled for any reason or if LESSEE fails or refuses to assign its rights under said Purchase Order to OWNER.

2.    DELIVERY OF AIRCRAFT. The Aircraft will be delivered to LESSEE at Wichita, Kansas, or at such other location and on such terms as shall be mutually agreed to by the parties. The expected delivery date of the Aircraft is October 30, 2000 , or such other date mutually agreed upon by the parties (the "Delivery Date"). Upon delivery of the Aircraft, LESSEE shall execute and deliver to OWNER a "Term of Delivery and Acceptance" substantially in the form of Annex B hereto.

3.    LOCATION AND USE OF AIRCRAFT. The Aircraft shall be based at the Aeroporto de Congonhas , in the city of São Paulo , São Paulo , Brazil. The permanent base of the Aircraft may be changed to another location within Brazil if LESSEE immediately notifies OWNER in writing of such new permanent base. The Aircraft shall not be based and/or operated outside Brazil without the prior written consent of OWNER. LESSEE will use the Aircraft primarily for business purposes.

EXHIBIT
A

1º REGISTRO DE TITULOS E DOCUMENTOS
LIMEIRA - SP 53884

4.    TERM AND PAYMENTS. The Aircraft is leased for a term of one hundred and twenty (120) months, commencing with the date of the delivery of the Aircraft to LESSEE as shown on the Term of Delivery and Acceptance signed by LESSEE or LESSEE'S agent. As consideration for the lease of the Aircraft, LESSEE agrees to pay OWNER one hundred and twenty (120) regular monthly rental payments of U.S. $36,080.05 each (hereinafter "Regular Monthly Rental Payments"). The first Regular Monthly Rental Payment shall be paid to OWNER thirty (30) days after the Delivery Date of the Aircraft and each subsequent Regular Monthly Rental Payment shall be due and payable to OWNER on or before the same day of each succeeding month (hereinafter "Monthly Rental Payment Date") during the lease term. All payments due under this Lease shall be payable to Cessna Finance Corporation, 220 West Douglas, Suite 300, P. O. Box 308, Wichita, Kansas U.S.A. 67202-3106, in lawful money of the United States of America, unless otherwise directed. Any late rental payments shall be subject to a late payment fee of one percent (1%) of the amount of the late rental payment per month or fraction thereof.

4.1    Five Business Days (as defined in Article 4.6) prior to each of the third (3rd), sixth (6th), ninth (9th), twelfth (12th), fifteenth (15th), eighteenth (18th), twenty-first (21st), twenty_fourth (24th), twenty-seventh (27th), thirtieth (30th), thirty-third (33rd), thirty_sixth (36th), thirty-ninth (39th), forty_second (42nd), forty-fifth (45th), forty_eighth (48th), fifty-first (51st), fifty-fourth (54th), fifty-seventh (57th), sixtieth (60th), sixty-third (63rd), sixty-sixth (66th), sixty-ninth (69th), seventy-second (72nd), seventy-fifth (75th), seventy-eighth (78th), eighty-first (81st), eight-fourth (84th), eighty-seventh (87th), ninetieth (90th), ninety-third (93rd), ninety-sixth (96th), ninety-ninth (99th), one hundred and second (102nd), one hundred and  fifth (105th), one hundred and eighth (108th), one hundred eleventh (111th), one hundred fourteenth (114th), and one hundred seventeenth (117th) Monthly Rental Payment Dates (each such date hereinafter referred to as a "Rental Review Date") OWNER shall establish a "Payment Adjustment Amount" for the three (3) Regular Monthly Rental Payments beginning with the first payment after the payment due five Business Days after the subject Rental Review Date. At each Rental Review Date hereunder, OWNER shall compute the Payment Adjustment Amount to be added to each Regular Monthly Rental Payment that comes due beginning with the first payment following the payment due five Business Days after such Rental Review Date, through and including the payment that comes due five Business Days after the next Rental Review Date. The Payment Adjustment Amount will vary for each Regular Monthly Rental Payment during such interval and shall be computed as follows. The Payment Adjustment Amount for each pertinent Regular Monthly Rental Payment shall be equal to the "Outstanding Lease Balance" set forth in Annex F for the  Regular Monthly Rental Payment immediately preceding such payment, multiplied by .08333, multiplied by the difference between 6.7175% and the three (3) month London Interbank Offered Rate ("LIBOR") as set forth in "The Wall Street Journal" for the pertinent Rental Review Date. If, on the pertinent Rental Review Date, LIBOR is greater than 6.7175% per annum, LESSEE shall pay OWNER on each of the subject Monthly Rental Payment Dates (beginning with the first payment due after the payment due five Business Days after the subject Rental Review Date), in addition to the Regular Monthly Rental Payments, the Payment Adjustment Amounts so calculated as described above. If, on the pertinent Rental Review Date, LIBOR is less than 6.7175% per annum, the amount of the Regular Monthly Rental Payments due from LESSEE on the pertinent Monthly Rental Payment Dates shall be reduced by the Payment Adjustment Amounts so calculated as described above. If, on the pertinent Rental Review Date, LIBOR equals 6.7175% per annum, no Payment Adjustment Amount will be due from LESSEE and no reduction in Regular Monthly Rental Payments will be made on the pertinent Monthly Rental Payment Dates. In the event a Rental Review Date falls on a date when "The Wall Street Journal" is not published or on which LIBOR is not published in "The Wall Street Journal", LIBOR will be determined by reference to the immediately preceding published rate for LIBOR. In the event LIBOR is no longer published, a reference rate will be determined by OWNER, in its sole discretion, by selecting another index which is similar, beyond OWNER's control and readily verifiable by LESSEE. OWNER shall notify LESSEE by telefax or otherwise of the Payment Adjustment Amount so calculated.

The Outstanding Lease Balance figures referenced above and set forth on Annex F have been calculated on the assumption that all Monthly Rental Payments and all other amounts due hereunder are paid promptly when they are due. The figures on Annex F also do not include any advances made by OWNER pursuant to Article 13 or interest thereon or any late payments that may accrue pursuant to this Lease, and therefore will not necessarily reflect the entire amount due pursuant to this Lease at any particular time. OWNER and LESSEE agree that the Outstanding Lease Balance  figures actually used to compute the Payment Adjustment Amounts will be increased to reflect all outstanding advances by OWNER pursuant to Article 13, if any, and any outstanding accrued interest thereon, and will be increased by any outstanding late payment amounts accrued at any subject Rental Review Date.

All sums payable by LESSEE hereunder shall be paid in full without any deduction or withholding whatsoever whether on account of any income or other taxes (imposed in Brazil or by any tax authority thereof, or by any other jurisdiction from which amounts due hereunder are paid), or any levies, imposts, duties, charges or withholdings of any nature, or any charges incurred of any nature (whether governmental or otherwise) for or in

Remar

1ª REGISTRO DE TITULOS E DOCUMENTOS
LIMEIRA - SP 5 3 8 8 4

connection with any remittances made hereunder. Upon OWNER'S request, LESSEE will provide OWNER with copies of tax receipts issued by the proper authorities evidencing payment by LESSEE of any and all such taxes. In the event LESSEE is compelled by law to make any such deduction or withholding from any payment to OWNER, then LESSEE shall pay or cause to be paid to OWNER such additional amount as will result after such deduction or withholding (and any further such deduction or withholding on such additional amounts) in the receipt by OWNER of the full amount to be paid hereunder.

4.2     LESSEE also agrees to pay to OWNER any and all other amounts, liabilities and obligations which LESSEE assumes or agrees hereunder to pay to OWNER, as they shall become due.

4.3     All amounts to be paid by LESSEE hereunder are stated and all payments hereunder will be made without deduction for or on account of any present or future taxes, duties, or other charges levied or imposed on the Aircraft, this Lease, or the proceeds hereof, or the OWNER by the Federative Republic of Brazil or any political subdivision or taxing authority thereof, which charges, if any, LESSEE agrees to pay and LESSEE warrants that all exchange permits for payments hereunder have been obtained.

4.4     LESSEE acknowledges and agrees that its obligation to pay any sums due to OWNER hereunder shall not be discharged, diminished or otherwise affected by any force majeure, and shall not be deemed paid unless and until such sums are actually and fully received by OWNER in United States dollars in the United States.

4.5     LESSEE's obligation to pay rent (and any other sum) hereunder shall be absolute and unconditional and shall not be affected by any circumstances, including, without limitation: (i) any set off, claim, counterclaim, recoupment, defense or other right which LESSEE may have against OWNER; (ii) any defect in title, airworthiness, condition, operation or fitness of use, or any damage of the Aircraft; (iii) any insolvency, bankruptcy, moratorium, reorganization or other administrative or court proceeding by or against LESSEE, or (iv) any other circumstance, happening or event whatsoever, whether or not similar to any of the foregoing.

4.6     If any date on which a payment becomes due and payable is not a Business Day ("Business Day" meaning any day other than a Saturday, a Sunday or other than a day on which commercial banking institutions in the City of Wichita, U.S.A. or the City of São Paulo, Brazil, are authorized by law to be closed), then the payment otherwise due and payable on such date shall be due and payable on the next succeeding working day.

5.     INTENTIONALLY OMITTED.

6.     CONDITIONS.  OWNER's obligation to lease the Aircraft to LESSEE shall be subject to LESSEE obtaining any and all approvals and permits required therefor by Brazilian law and satisfaction of each of the following conditions:

(i)     The receipt by OWNER from LESSEE, not later than five (5) Business Days prior to the Delivery Date of the following, all of which shall be in the English language (or, if in any language other than English, accompanied by a complete English translation) and be satisfactory in form and substance to OWNER:

(a)     INTENTIONALLY OMITTED.

(b)     Copies of LESSEE's By-Laws certified to be true and up to date copies by a duly authorized officer of LESSEE;

(c)     Copies of the Minutes of the Shareholders' General Meeting where LESSEE's incumbent Administration Council was elected, certified to be true and up to date copies by a duly authorized officer of LESSEE;

(d)     Copies of Minutes of the Meeting of the Administration Council where LESSEE's incumbent Board of Directors was elected, certified to be true and up to date copies by a duly authorized officer of LESSEE;

1ª REGISTRO DE TÍTULOS E DOCUMENTOS
LIMEIRA ~ SP
5 3 8 8 4
Registrado em microfilmagem

(e)   Original copy of the power of attorney granted by LESSEE empowering LESSEE's attorney(s)-in-fact to execute and deliver this Lease and other related documents to OWNER, together with a copy of LESSEE's Board Resolution that approved the transactions contemplated herein;

(f)   A certificate of a duly authorized officer of LESSEE setting out the names and signatures of the person or persons authorized to sign this Lease and any document to be delivered by LESSEE pursuant hereto;

(g)   Evidence of the appointment of and the formal acceptance by the agent for service of process as set forth in Article 16.2 hereof;

(h)   Original power of attorney duly notarized granted by LESSEE to OWNER for the deregistration and return of the Aircraft in the form of Annex C hereto;

(i)   Evidence that COTAC - Comissão de Coordenação do Transporte Aéreo Civil do Ministerio da Aeronáutica (Coordination Committee of Civil Air Transportation of the Ministry of Aeronautics) and the Director General of the Departmento de Aviação Civil ("DAC") have authorized LESSEE to enter into the transactions contemplated in this Lease;

(j)   Printouts of the Registration of Financial Operation containing the approval of the Central Bank of Brazil and the Import License approved by the foreign trade department of SECEX - Secretaria de Comércio Exterior or a delegate institution, together with a certificate signed by a duly authorized officer of LESSEE confirming that the Lease has been duly approved by the Central Bank of Brazil and that the Aircraft can be lawfully imported into Brazil;

(k)   Original copies of the Personal Guarantee signed by Roberto Antonio Augusto Ramenzoni and Industrias de Papel R. Ramenzoni S.A. in the form of Annex G hereto, which  Portuguese version must be duly notarized and registered with the relevant Registro de Títulos e Documentos (Documents Registry Office).

(l)   Such other documents as OWNER may reasonably request.

(ii)   The receipt by OWNER from LESSEE as early as practicable but in any event no later than the Delivery Date of evidence of the issuance of each further approval, license and consent that may be required in relation to the validity and enforcement of this Lease, all of which shall be in English language (or, if in any language other than English, accompanied by a complete English translation) and be in form and substance satisfactory to OWNER including, without limitation:

(a)   Evidence of the lodging of this Lease and its official Portuguese translation at the Brazilian Aeronautics Registry (Registro Aeronáutico Brasileiro - the "RAB"), for registration;

(b)   Evidence of the registration of this Lease and its official Portuguese translation at the competent "Registro de Títulos e Documentos" (Documents Registry Office);

(c)   Evidence that a ferry flight permit for the entry of the Aircraft into Brazil has been obtained, if necessary; and

(d)   Such other documents as may be required by law and/or as OWNER may reasonably request.

1ª REGISTRO DE TÍTULOS E DOCUMENTOS
LIMEIRA - SP 53884

(iii)   On the Delivery Date, the receipt by OWNER from LESSEE of the following, all of which shall be in English language (or, if in any language other than English, accompanied by a complete English translation) and be in form and substance satisfactory to OWNER:

(a)   A signed original legal opinion of LESSEE'S Brazilian counsel dated as of the Delivery Date in substantially the form and substance of Annex D hereto;

(b)   A certificate signed by an independent aircraft insurance broker as to the due compliance with the insurance provisions of Article 7 hereof;

(c)   A certificate, signed by a duly authorized officer of LESSEE, dated the Delivery Date, stating that all necessary approvals, authorizations, consents, licenses, certificates and orders of all regulatory and other authorities having jurisdiction with respect to the ownership, use or operation of the Aircraft or the transactions contemplated hereby have been obtained, are in full force and effect and constitute sufficient authorization therefor;

(d)   A signed original copy of the Term of Delivery and Acceptance in substantially the form of Annex B hereto; and

(e)   Such other documents that OWNER may reasonably request.

(iv)   As soon as practicable after the Delivery Date but in any event no later than within 15 (fifteen) days thereafter, the receipt by OWNER from LESSEE of:

(a)   Evidence of registration of the Lease and its official Portuguese translation with the RAB.

(b)   Evidence of approval of the Schedule of Payments by the Central Bank of Brazil authorizing LESSEE to timely remit all rent and other scheduled payments due hereunder.

(c)   Certified copies of the Certificates of Airworthiness and Registration for the Aircraft issued by RAB naming LESSEE as operator and OWNER as the owner and lessor, accompanied by the respective English translations thereof; and

(d)   Evidence of registration of the Term of Delivery and Acceptance in substantially the form of Annex B hereto, both with the Brazilian Aeronautics Registry and Documents Registry Office;

(e)   Copies of the customs clearance (Declaração de Importação) and related documents issued in connection with the import of the Aircraft as well as of payment of all taxes, duties and fees for the import of the Aircraft.

(f)   Evidence that the authorization has been obtained from the relevant agent of the Ministry of Finance for the lawful import of the Aircraft into Brazil under the special regime of temporary admission.

6.1   The English language version of this Lease and all other contractual undertakings between OWNER and LESSEE shall control in the event that there is a conflict between the English version of any such document and a translation in another language.

7.   INSURANCE.   LESSEE shall, at LESSEE'S expense, secure and maintain in effect throughout the term of this Lease, as a minimum, insurance coverage on the Aircraft as follows:



1º REGISTRO DE TÍTULOS E DOCUMENTOS
LIMEIRA - SP
Registrado em microfilme sob nº 5 3 8 8 4

(a)     Bodily Injury Liability          )
             Including Passengers         )      US $25,000,00
                                                              )      Single Limit
(b)     Property Damage Liability  )

(c)     Hull Insurance _    Hull insurance shall be in an amount such that the Aircraft has full coverage at all times that is at least as great as its Stipulated Loss Value as determined by reference to Annex E to this Lease.

(d)     Repossession Insurance -   OWNER has secured political risk repossession insurance, coverage type LSW147 (hereinafter  "LSW147"), providing coverage for a term of three (3) years.  LESSEE has paid or caused OWNER to be paid for said coverage at OWNER's standard rate.  OWNER may, at its option and at  LESSEE'S expense,  secure LSW147 to cover additional portions of the term of this Lease, for which coverage LESSEE agrees to pay or cause OWNER to be paid OWNER's standard rate immediately upon request.  In the event OWNER desires to obtain LSW147 to cover additional portions of the term of this Lease, but is unable (with the exercise of due diligence) to do so, LESSEE shall provide a similar policy at its expense; provided, however, that if LESSEE is unable to do so, LESSEE shall not base or operate the Aircraft outside the continental United States without prior written consent of OWNER, which consent OWNER shall not unreasonably withhold.   All insurance obtained by either party pursuant to this Article shall be written in insurance companies and with terms acceptable to OWNER, and shall name OWNER as loss payee.

7.1     All insurance shall be written in the name of OWNER and LESSEE and shall name OWNER as loss payee.  Hull insurance shall be all risk ground and flight, include a breach of warranty endorsement in favor of OWNER, provide for 30 days prior written notice to OWNER of cancellation and provide coverage for war and confiscation risk and foreign object damage.   All insurance shall be written in insurance companies and with terms (including, but not limited to, maximum deductibles) acceptable to OWNER.

7.2     LESSEE shall furnish OWNER copies of all hull and liability insurance policies and all endorsements and attachments thereto, whether the insurance is purchased at the beginning or during the term of the Lease.  LESSEE shall furnish OWNER evidence that required insurance has been secured prior to the delivery of the Aircraft.

8.      RISK OF LOSS.  All risks of loss or damage to the Aircraft, from whatever cause, are hereby assumed by LESSEE.  It is the intent of the parties that this Article 8 be construed in all events so that OWNER shall be paid in full for every loss, charge or expense it suffers or incurs in connection with any loss, damage, destruction, seizure, condemnation, confiscation or taking of the Aircraft, whether partial or total.  Upon the occurrence of any such event, LESSEE shall promptly report the same to the insurance company, OWNER and all applicable federal, state, and other governmental agencies,   shall furnish such information and execute such documents as may be required for OWNER to make claim under the applicable insurance policies, and shall, in the case of any seizure, condemnation, confiscation or taking, take all necessary action to secure release of the Aircraft and the rights and liabilities of the parties shall be as follows.

(a)  In the event the Aircraft is lost or damaged beyond repair or seized, condemned, confiscated     or in any manner taken by the Government of Brazil or any foreign government or any political subdivision thereof or any agencies of any such governments or political subdivisions, or by any terrorist or terrorist group or by any other party, person or persons whatsoever, LESSEE shall, on the earlier of ten (10) days after any payment by the insurance company of any claim made in respect of any such loss or other event or ninety (90) days after the date of any such loss or other event, pay OWNER an amount equal to the Stipulated Loss Value of the Aircraft on the date of such payment by LESSEE to OWNER as determined by reference to Annex E to this Lease, plus all other sums due hereunder, less the amount of any proceeds of insurance received by OWNER in respect of such loss or other event.  LESSEE shall continue to pay the Regular Monthly Rental Payments and all other sums due hereunder as the same become due until receipt by OWNER of payment from the insurance company and LESSEE as set forth above.  Upon receipt by OWNER of all payments from the insurance company and LESSEE as



1ª REGISTRO DE TITULOS E DOCUMENTOS
LIMEIRA - SP  3 8 8 4
Registrado em microfilme sob nº

above set forth, this Lease shall end. In the event of full payment by LESSEE prior to OWNER's receipt of any insurance proceeds, OWNER will assign to LESSEE all claims it may have against the insurance company under the insurance policy and, in the case of any such seizure, condemnation, confiscation or taking, will transfer to LESSEE its interest in the Aircraft AS IS, WHERE IS, with no warranties, express or implied.

(b)   If the Aircraft is only partially damaged, this Lease shall remain in full force and effect and LESSEE shall at its cost and expense, promptly repair the Aircraft so as to place it as nearly as possible in the same condition as it was before the damage. To the extent such damage is covered by the heretofore described insurance, OWNER, upon receiving from LESSEE such information and such documents as may be required, shall make claim under the insurance policy and shall promptly reimburse LESSEE for the cost of repairing the Aircraft to the full extent of, but not more than, the net amount of any insurance recovery actually received, provided, however, that no such payment shall be made if LESSEE has not paid all amounts then owing hereunder and the payment shall not be made until the repairs have been approved by OWNER or its designees. During the period the Aircraft is being repaired, LESSEE shall continue to pay the Regular Monthly Rental Payments and all other sums due hereunder and under any other contract or agreement between the parties as they become due. If payment for the damage to the Aircraft is not made to OWNER by the insurance company, LESSEE shall be obligated to repair the Aircraft at its sole cost and expense and OWNER will thereafter assign to LESSEE all claims it may have against the insurance company for the damages to the Aircraft.

9.     INSIGNIA.  LESSEE may affix to the Aircraft any proper advertisement or insignia designed by LESSEE to indicate the same is being used in the business of LESSEE. At the expiration or termination of this Lease, LESSEE agrees at its expense to remove such advertisement or insignia and to restore the paint of the Aircraft so as to place it as near as possible in the same condition as it was at the time of delivery. Failure of LESSEE to so remove such advertisement or insignia shall make LESSEE liable to OWNER for the cost of such removal, which cost LESSEE agrees to pay to OWNER forthwith upon demand.

10.     LESSEE COVENANTS.  LESSEE covenants and agrees:

(a)     to obtain all licenses and registrations required by law, in the name of OWNER forthwith upon execution of this Agreement; to pay all existing and future taxes, assessments, licenses and other fees and charges imposed by any national, state, or municipal government or other public or airport authority, U.S., Brazilian or otherwise, of any nature whatsoever on this Lease, on OWNER's purchase and/or ownership of the Aircraft for lease to LESSEE hereunder, on any payments hereunder, on the Aircraft or on its use during the term of this Lease (including penalties and interest) whether the same be payable by or assessed to OWNER or LESSEE and whether assessed during the term or after the expiration or cancellation of this Lease, including, without limitation, any withholding taxes, import duties, value added taxes or asset taxes and to save OWNER free and harmless therefrom or, if under local law or custom payment therefor may be made only by OWNER, to reimburse OWNER upon demand for any such payments made by OWNER; to file any returns or reports in connection with the foregoing required of either OWNER or LESSEE except when OWNER makes payment as aforesaid: to post, make or obtain at LESSEE's expense, any bond, money deposit, or administrative attachment, respectively, necessary or required in connection with any such taxes, assessments, licenses and other fees or charges, including, but not limited to, any such bond, deposit or attachment necessary or required in connection with any import permit; to deliver written proof, upon OWNER's request, of payment of all such taxes, assessments, licenses and other fees;

(b)     that the Aircraft will be used and operated (1) in accordance with the operating instructions of the manufacturers; (2) in conformity with all laws, ordinances, rules and regulations, national, state, municipal or otherwise, now existing or hereafter enacted, controlling or in any way affecting the operation, use or possession of the Aircraft or the use of any airport premises by the Aircraft; and (3) only in compliance with the conditions and limitations set forth in the applications for or policies of insurance made or issued pursuant to the terms of this Lease and the Aircraft shall not be used and operated for any purpose or in any manner or area which is



1º REGISTRO DE TÍTULOS E DOCUMENTO
LIMEIRA - SP
Registrado sob microfilmagem sob nº 3 8 8 4

excluded or prohibited by said insurance policies, unless prior to such use LESSEE first obtains appropriate additional insurance coverage and advises OWNER in writing (all such additional insurance to be subject to approval by OWNER);

    (c)    at LESSEE'S expense to keep the Aircraft enrolled and participating at all times in the manufacturer's CESCOM Maintenance Monitoring System and at LESSEE'S expense to maintain and keep the Aircraft in good order and repair and completely airworthy, which shall include but shall not be limited to maintenance and repair in accordance with the requirements of the Federal Aviation Administration, the Department of Civil Aviation of the Ministry of Aeronautics in Brazil ("DAC"), and/or any other governmental authority and the manufacturers' recommendations, and within a reasonable time to replace any and all parts or equipment, including engines, which may be worn out, lost, destroyed, confiscated or otherwise rendered unsatisfactory or unavailable for use in or on the Aircraft, which replacements shall be in good operating condition and have a value, utility, and quality at least equal to the property replaced if such property were in good operating condition and be free and clear of all liens and encumbrances. All parts or equipment at any time removed from the Aircraft shall remain the property of OWNER no matter where located, until such time as such parts or equipment shall be replaced by parts or equipment which have been incorporated or installed in, or attached to the Aircraft. For so long (and for only so long) as LESSEE shall not be in default hereunder and no event shall have occurred that would become an event of default hereunder with the passage of time, LESSEE shall be entitled to exercise OWNER'S rights and privileges under the warranties of the manufacturers of the Aircraft, the terms of which warranties are known and understood by LESSEE, and that, except in case of emergencies, all repairs and maintenance shall be performed at service facilities approved by Cessna Aircraft Company for the model of aircraft covered by this Lease;

    (d)    at LESSEE'S expense (1) to cause all inspections and all major overhauls on the Aircraft and its engines to be performed as required by the Federal Aviation Administration, the DAC or any other governmental authority and as recommended by the manufacturers; (2) to comply with all directives and requirements of the Federal Aviation Administration, the DAC or any other governmental authority pertaining to the Aircraft; and (3) to comply with the manufacturers' service letters and bulletins applicable to the Aircraft;

    (e)    that LESSEE shall not make any alterations or modifications to the Aircraft or install any additional equipment therein without the prior written consent of OWNER; that unless otherwise agreed in writing prior to installation, all additional equipment installed in the Aircraft shall become the property of OWNER forthwith, be included in the definition of the Aircraft and subject to all of the terms and conditions of this Lease;

    (f)    that neither this Lease nor LESSEE'S rights hereunder shall be assignable by LESSEE nor shall the Aircraft be subleased or loaned without the prior written consent of OWNER and LESSEE will not permit any charge, lien, or encumbrance of any nature to be placed or to remain upon the Aircraft;

    (g)    to inspect the Aircraft upon receipt and furnish OWNER the Term of Delivery and Acceptance; upon acceptance it shall be conclusively presumed that LESSEE accepted the Aircraft in its then condition and that it has been found by LESSEE to be in good, safe and serviceable condition and fit for LESSEE'S intended use; to permit OWNER and its designees at all reasonable times to inspect the Aircraft; and to furnish any information with respect to the Aircraft and its use and maintenance that OWNER may reasonably request;

    (h)    to be liable to OWNER for and indemnify OWNER against any and all damage to the Aircraft which occurs in any manner from any cause or causes during the term of this Lease or until the redelivery of the Aircraft to OWNER, except to the extent that OWNER shall be promptly paid for such damage pursuant to the heretofore described insurance, and to indemnify and save OWNER harmless from and against any and all claims, costs, expenses, demands, liabilities, penalties, fines, and forfeitures of any nature whatsoever which may be asserted against OWNER or the Aircraft or incurred by OWNER arising out of or in any manner occasioned by

1º REGISTRO DE TÍTULOS E DOCUMENTOS
LIMEIRA – SP 5 3 8 8
Registra documento mic sob n°

LESSEE'S use, operation or maintenance of the Aircraft during the term of this Lease or until redelivery of the Aircraft to OWNER and that this coverage community while service the expiration, cancellation or termination of this Lease;

(i)     to maintain all records, logs, and other materials required by the Federal Aviation Administration or any other governmental authority to be maintained in respect of the Aircraft, to make the same available at all reasonable times for inspection by OWNER and at the expiration or termination of this Lease to deliver such materials to OWNER;

(j)     to permit the Aircraft to be operated only by pilots having completed a training course approved by Cessna Aircraft Company for the operation of the type of aircraft covered by this Lease, and having a current certificate as required by the Federal Aviation Administration or any other governmental authority and who meet the minimum requirements of the heretofore described insurance policies, certificates or applications;

(k)     to pay for all fuel, oil and other consumables for operation of the Aircraft;

(l)     to maintain a hangar facility for storage of the Aircraft at the airport identified in accordance with Article 3.

11.     RETURN OF AIRCRAFT.  At the termination of this Lease, however caused, LESSEE shall deliver possession of the Aircraft to OWNER at Wichita, Kansas, or at another mutually acceptable location, in the same condition as when delivered to LESSEE, excepting only normal wear, with all systems operating normally, a current U.S. Airworthiness Certificate, and with no open mandatory service bulletins, service letters, manufacturers' directives or airworthiness directives.  If the Aircraft is not returned to OWNER in compliance with the foregoing return requirement, LESSEE shall pay OWNER the amount necessary to put the Aircraft in such condition, plus transportation and costs of proper storage, plus daily rent of US$ 1,202.67   per day until OWNER is able (with the exercise of due diligence) to put the Aircraft into such condition.

12.     LESSEE REPRESENTATIONS AND WARRANTIES.  LESSEE hereby represents and warrants to OWNER that on the date hereof and at all times during the term hereof:

(a)     LESSEE has adequate power and capacity to enter into, and perform under, this Lease and all related documents (together, the "Documents") and is duly qualified to do business wherever necessary to carry on its present business and operations, including the jurisdiction where the Aircraft is to be based.

(b)     The Documents have been duly authorized, executed and delivered by LESSEE and constitute valid, legal and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies therein provided may be limited under applicable bankruptcy and insolvency laws.

(c)     No approval, consent or withholding of objections is required from any governmental authority or instrumentality with respect to the entry into or performance by LESSEE of the Documents except for those referred to in Article 6 hereof.

(d)     The entry into and performance by LESSEE of the Documents will not:  (i) violate any judgment, order, law or regulation applicable to LESSEE or any provision of LESSEE's Certificate of Incorporation or Bylaws, Partnership Agreement or similar document, or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon the Aircraft pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than this Lease) to which LESSEE is a party.

(e)     There are no suits or proceedings, pending or threatened, in court or before any commission, board or other administrative agency against or affecting LESSEE, which would have a material adverse effect on the ability of LESSEE to fulfill its obligations under this Lease.

(f)     Each Balance Sheet and Statement of Income and all other financial information delivered to OWNER has been prepared in accordance with generally accepted accounting principles, and since the date of the most recent such Balance Sheet, Statement of Income and financial information, there has been no material adverse change.

(g)     LESSEE has selected the Aircraft, manufacturer and vendor thereof, and approves of all maintenance facilities required hereby.

(h)     Except for the registration of this Lease and the Term of Delivery and Acceptance with the Documents Registry Office and the RAB and the schedule of payments to be issued by the Central Bank of Brazil, and the issuance of the Certificate of Registration with respect to the Aircraft naming LESSEE as the authorized operator of the Aircraft and indicating that the OWNER is the owner and lessor of the Aircraft pursuant to RAB's regulations, no other registration and no further filing or recording of this Lease and/or the Documents is necessary or advisable under the laws of Brazil or, to the best of LESSEE's knowledge, any other jurisdiction in order to fully protect, establish and perfect OWNER's title to and interest in the Aircraft as against LESSEE and any third parties claiming by or through LESSEE in any jurisdiction.

(i)     The provisions in Article 16 concerning applicable law, service of process and jurisdiction are valid and binding on LESSEE under the law of Brazil and no provision of this Lease is prohibited, unlawful or unenforceable under any such laws.

(j)     No taxes, levies, imposts, duties, charges or withholdings may be imposed by the government of Brazil or any taxing authority in Brazil upon or with respect to the execution or delivery of this Lease, the payment or receipt of rent, the ownership or the lease of the Aircraft or, in case of Default, the enforcement of this Lease or OWNER's rights and interests in the Aircraft by any legal or administrative proceeding.

(k)     LESSEE is aware of the legal requirements for the import of the Aircraft into Brazil and the relevant taxes, fees and duties payable as a result of such import, whether or not they have been individually or collectively referred to elsewhere in this Agreement and shall fully comply with such requirements and pay such taxes, fees and duties as they become due.  Any reduction, deferral or suspension of such taxes, fees and/or duties, or any other type of benefit that may  be available in Brazil in relation to the import of the Aircraft, including, without limitation, the benefit of temporary admission, if obtained by LESSEE, shall be so obtained at the sole responsibility and risk of LESSEE.  LESSEE recognizes and confirms that neither OWNER, nor any agent, representative or dealer of OWNER or OWNER's affiliates, has in any way advised LESSEE on any such matter and, therefore, neither OWNER, nor it affiliates, nor any agents, representatives, or dealers thereof shall be held liable for any consequence resulting therefrom.

13.     DEFAULT BY LESSEE.  In the event LESSEE fails to repair and maintain the Aircraft, discharge all liens, secure all licenses or registrations, pay all taxes, assessments, licenses, and other fees or charges, pay all costs and expenses to be paid by LESSEE, procure and maintain insurance, all as above provided, or to perform any of the other covenants or obligations of LESSEE, OWNER, at its option, may do so, and all advances and expenses incurred by OWNER in connection therewith  shall be repaid by LESSEE to OWNER upon demand, together with interest thereon at the highest applicable rate allowed by law [but not more than one percent (1%) per month or fraction thereof] until paid.  OWNER may enter upon the premises where the Aircraft is located for purpose of inspection, and may remove the Aircraft forthwith, without notice to LESSEE, if, in the opinion of OWNER, the Aircraft is being improperly used or maintained.

13.1    If LESSEE shall fail to make any Regular Monthly Rental Payment or to pay any other amounts payable hereunder when the same are due and payable, or if LESSEE should default in the performance of any of the other terms, conditions, or covenants to be performed by LESSEE hereunder, or if LESSEE should

1º REGISTRO DE TÍTULOS E DOCUMENTOS
LIMEIRA - SP 53 884

default in the performance of any of the terms, conditions or covenants to be performed by LESSEE under any other contracts or agreements between LESSEE and OWNER at any time, or if the insurance required to be maintained hereunder shall expire or be canceled and LESSEE shall fail to replace such insurance, or if the Aircraft shall be misused or abandoned, or if LESSEE shall become insolvent, commit any act of bankruptcy or if bankruptcy, moratorium, insolvency or liquidation proceedings (judicial or administrative), are begun by or against LESSEE, or if a receiver is appointed for LESSEE, or if for any reason OWNER shall deem said Aircraft or itself insecure, then OWNER, at its option, and in addition to and without prejudice to any other remedies, may terminate this Lease by means of simple notice to LESSEE and take possession of and remove the Aircraft, with or without notice to LESSEE, and with or without legal proceedings, and in removing the Aircraft, OWNER may, if permitted by law, use any of LESSEE'S licenses in respect to the Aircraft.

13.2    For the purposes of repossessing the Aircraft, concurrently with the execution of this Lease, LESSEE shall issue a power of attorney substantially in the form set forth in Annex C, empowering OWNER to obtain the proper deregistrations and permits for the return of the Aircraft.  LESSEE expressly instructs and irrevocably authorizes OWNER to use the powers granted under the power of attorney for the purposes herein mentioned in case of Default by LESSEE.  Upon repossessing the Aircraft OWNER may, at its sole discretion, sell or otherwise dispose of, hold, use, operate, lease to others or keep idle the Aircraft without any duty to account to LESSEE with respect to such action or inaction or for any proceeds with respect thereto.

13.3    Upon such termination, LESSEE shall be liable to OWNER, the full amount of OWNER's damages caused by LESSEE's default(s).  LESSEE shall also pay any and all costs and expenses incurred by OWNER in the repossession of the Aircraft, including, but not limited to, court costs and attorneys' fees, where allowed by law, and transportation and storage expenses, plus all reasonable costs and expenses required to refurbish or repair the Aircraft to bring it into compliance with the return conditions set forth in Article 11 hereof.  In addition, LESSEE shall forthwith pay OWNER all other sums due under other provisions of this Lease, including, but not limited to, past due Regular Monthly Rental Payments, Payment Adjustment Amount, additional rents and late payment fees.

13.4    The OWNER's remedies in case of default in any of the terms and conditions of this Lease are cumulative and OWNER may exercise, either successively or concurrently, any and all remedies it may have under this Lease or otherwise, by virtue of LESSEE's default.

14.    NO REPRESENTATIONS.  Time is of the essence of this Lease.  No representations, warranties, promises, guarantees, covenants or agreements, oral or written, express or implied, have been made by either party with respect to this Lease or the Aircraft, except as expressly provided herein.

15.    MISCELLANEOUS.  This Agreement is, and is intended to be, a lease, and LESSEE does not acquire any right, title or interest whatsoever, legal or equitable, in the Aircraft except its interest as LESSEE hereunder as expressed herein.  Though LESSEE herewith acknowledges and agrees that its only interest in the Aircraft is that of a lessee hereunder and that it does not acquire any other right, title or interest whatsoever, legal or equitable, in the Aircraft, LESSEE hereby grants OWNER a lien and security interest in all of LESSEE'S interest in the Aircraft of whatever nature or description that LESSEE may hereby or otherwise acquire, legal or equitable, and in all proceeds thereof, to secure all of LESSEE'S obligations hereunder and under any other agreement with OWNER.  OWNER covenants that if LESSEE is not in default under this Lease as described herein, LESSEE shall peacefully and quietly hold, possess and use the Aircraft during the entire Lease term, free from any interference or hindrance.  Rentals hereunder shall not abate during the term hereof because LESSEE'S right to possession of the Aircraft has terminated, or for any other reason.

15.1    LESSEE shall at no time during this Lease for any purpose whatsoever be or become the agent of OWNER, and OWNER shall not be responsible for the acts and omissions of LESSEE or LESSEE'S agents.  OWNER's failure to enforce strictly any provisions of this Lease shall not be construed as a waiver thereof.  OWNER may assign its rights under this Lease and when so assigned, this Lease shall be free from any charges, claims, or defenses whatsoever which LESSEE may have against OWNER.  This Lease, which, together with the referenced Annexes, constitutes the entire agreement between the parties, shall be binding on the heirs, executors, administrators, successors and assigns of LESSEE and inure to the benefit of OWNER'S successors and assigns.

1º REGISTRO DE TÍTULOS E DOCUMENTOS
LIMEIRA - SP
Registrado em microfilme sob nº 53884

Except as elsewhere herein provided, any change or modification to this Lease shall be in writing and signed by the parties hereto.

16.     LAW AND JURISDICTION.   Any provision of this Lease which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining such provisions hereof, and any such prohibition or enforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction To the extent permitted by applicable law, LESSEE hereby waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect. The captions in this Lease are for convenience of reference only and shall not define or limit any of the terms or provisions hereof. In that the agreement has been proposed by OWNER, this Lease shall in all respects be governed by, and construed in accordance with the laws of the State of Kansas, United States of America, including all matters of construction, validity and performance.

16.1     All notices, demands and other communications required under the terms hereof shall be in writing, and any such notice shall be deemed properly delivered and received when and if either (i) personally delivered; (ii) delivered by Federal Express or other overnight courier; or (iii) three (3) Business Days after being deposited in the government mail service, by registered or certified mail, return receipt requested, postage prepaid, addressed to the appropriate party at its address set forth in the preamble hereof, or at such other place as such party may from time to time hereafter designate to the other in writing.

16.2     LESSEE agrees that any legal action or proceeding arising out of or relating to this Lease or the Documents may be instituted in any court of the State of Kansas or in the United States District Court for the District of Kansas.  LESSEE irrevocably and unconditionally submits to the jurisdiction of such courts in any such action or proceeding and waives any and all objections relating to the basis for personal or in rem jurisdiction or to venue which it may now or hereafter have in any such suit, action or proceeding.  For the purpose of any action or proceeding taken in the State of Kansas, LESSEE shall, at all times during the term of this Lease, maintain an agent for service of process in the State of Kansas.  To this effect, LESSEE hereby irrevocably designates, appoints and empowers McDonald, Tinker, Skaer, Quinn & Herrington, P.A. , with offices at 300 West Douglas, Suite 500, , in Wichita, Kansas 67202-2909  , as its duly authorized and lawful agent to receive process in any state or federal action or proceeding in the State of Kansas based on, arising out of, or connected with this Lease.  LESSEE agrees that service of process upon such Representative and notice of service to the LESSEE at its address set forth in Article 16.1 hereof (from OWNER), shall be deemed in every respect effective service of process.  The foregoing shall not, however, limit the rights of OWNER to serve process in any other country or any other manner permitted by law or to bring any legal action or proceeding or to obtain an attachment or execution of judgment in any appropriate jurisdiction, including in the courts of Brazil.

16.3     If for the purpose of obtaining judgment in any court in any country it becomes necessary to convert the amount due under this Lease into the currency of such country, then the conversion shall be at the rate of exchange prevailing on the day of actual payment of such amount to OWNER.  For this purpose, "rate of exchange" means the rate at which OWNER is able on the relevant date to purchase U.S. Dollars with such currency in such country.

17.     NO OWNER WARRANTIES; LIMITATION OF LIABILITY.    TO THE EXTENT ALLOWED BY APPLICABLE LAW, THERE ARE NO WARRANTIES BY OWNER APPLICABLE TO THE AIRCRAFT, EXPRESS OR IMPLIED, WHETHER OF MERCHANTABILITY, DESCRIPTION, DURABILITY, FITNESS FOR A PARTICULAR USE OR PURPOSE OR OTHERWISE, ALL OF SUCH WARRANTIES BEING HEREBY EXPRESSLY DISCLAIMED. OWNER HAS NOT AUTHORIZED ANY THIRD PARTY, INCLUDING, BUT NOT LIMITED TO, THE CESSNA AIRCRAFT COMPANY, ITS OFFICERS, AGENTS, AND EMPLOYEES, TO MAKE ANY REPRESENTATIONS, WARRANTIES, PROMISES, GUARANTEES, COVENANTS OR AGREEMENTS, ORAL OR WRITTEN, CONCERNING THE AIRCRAFT OR THIS LEASE ON OWNER'S BEHALF AND OWNER IS NOT BOUND BY ANY SUCH REPRESENTATIONS, WARRANTIES, PROMISES, GUARANTEES, COVENANTS OR AGREEMENTS. OWNER SHALL HAVE NO LIABILITY TO LESSEE FOR ANY CLAIM, LOSS OR DAMAGE CAUSED OR ALLEGED TO HAVE BEEN CAUSED, DIRECTLY OR INDIRECTLY, BY THE AIRCRAFT OR THE USE THEREOF, WHETHER SUCH DAMAGES OR ALLEGED DAMAGES ARE GENERAL, SPECIAL, CONSEQUENTIAL, INCIDENTAL, OR OTHERWISE, WHETHER SUCH

LIABILITY OR ALLEGED LIABILITY ARISES OR IS ALLEGED TO ARISE OUT OF ANY DESIGN, MANUFACTURING OR OTHER DEFECT, LATENT OR PATENT, MAINTENANCE, STRICT LIABILITY, CRASHWORTHINESS OR ANY OTHER STATUTORY OR COMMON LAW THEORY OF LIABILITY WHATSOEVER.  LESSEE'S OBLIGATIONS TO PAY RENT AND ALL OTHER AMOUNTS DUE HEREUNDER AND TO PERFORM ALL OF LESSEE'S OTHER OBLIGATIONS HEREUNDER SHALL BE ABSOLUTE AND UNCONDITIONAL.  LESSEE AGREES NOT TO ASSERT AGAINST OWNER, ANY SUBSEQUENT HOLDER, OR ANY ASSIGNEE OF OWNER'S RIGHTS HEREUNDER, ANY CHARGES, CLAIMS OR DEFENSES (INCLUDING, WITHOUT LIMITATION, RECOUPMENT, SETOFF OR COUNTERCLAIM), EITHER IN LAW OR IN EQUITY, THAT LESSEE MAY HAVE AGAINST THE SELLER OR MANUFACTURERS OF THE AIRCRAFT, INCLUDING, BUT NOT LIMITED TO, THE CESSNA AIRCRAFT COMPANY.  THIS PROVISION HAS BEEN POINTED OUT TO LESSEE. LESSEE HAS READ AND UNDERSTANDS IT.

IN WITNESS WHEREOF, this Lease has been finally executed at Wichita, Kansas, as of the day and year first above written in quadruplicate originals, one executed copy of which was delivered to LESSEE, the receipt of which is hereby acknowledged.

LESSEE:   Remar Administracao e Comercio S/A.

By: _____

Name   Roberto Antonio Augusto Ramenzoni
Title  President

OWNER:   CESSNA FINANCE CORPORATION

By: _____
    Name                              Title

Witnesses:

1. Wanderley Bernardo Conceicao

2. Adilson Pinheiro de Matos

```
┌─────────────────────────────────────────────┐
│  1º REGISTRO DE TÍTULOS E DOCUMENTOS         │
│              LIMEIRA - SP   5 3 8 8 4         │
│  Registrado em microfilme sob nº             │
└─────────────────────────────────────────────┘
```

STATE OF          KANSAS    )
                            )SS:
COUNTY OF         SEDGWICK   )

       BE IT REMEMBERED, That on this 26th day of October_____, 2000, before me, a Notary Public, in and for said County and State, came  Leon Metzinger, President_____ of Cessna Finance Corporation personally known to be the same person who executed the foregoing instrument, and duly acknowledged the execution of the same, for and on behalf of, and as the duly authorized act and deed of said corporation.

       IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal the day and year last above written.

_Marika Miller_
Notary Public

My Commission Expires:

_5/24/03_

```
        .........................
      .:''  MARIKA MILLER  ''::.
    .:'         NOTARY         ':.
    ::          PUBLIC          ::
    ::        My Appl. Exp.      ::
    ::          5/24/03          ::
     ':.    STATE OF KANSAS    .:'
        '''.................''''
```



**Cessna Finance Corporation**

A Textron Company

October 5, 2000

Biscayne Key Investments Inc.
51 Southwest 9th Street
Miami, FL 33130

RE:  Cessna Citation, Model 525,  Serial No. 525-0403

Gentlemen:

Reference is made to the aircraft above captioned (the "Aircraft") owned by Cessna Finance Corporation ("CFC") and to be leased to Remar Administracao e Comercio S/A. , a Brazilian company with head offices at Rodovia Mato Grosso do Sul, 395, KM6,5 Sala 1 in the city of Brasilandia, State of MS 79670-00, Brazil (the "Lessee"), pursuant to Aircraft Lease No. 00-P1119 dated as of September 18, 2000, (the "Lease"), for a term of 120 months, counted as from the date stated on the Term of Delivery and Acceptance executed by Lessee upon delivery of the Aircraft (the "Delivery Date"). Terms defined in the Lease are used herein as therein defined.

In consideration for this letter agreement, Biscayne Key Investments Inc.    ("Purchaser") shall, on or before the Delivery Date, pay CFC the sum of US $ 1,000,000  (the "Down Payment") and the sum of US $ 27,686.50 (the "Structuring Fee").  The Down Payment and the Structuring Fee are non-refundable.  In addition, Purchaser shall, on or before the Delivery Date, pay CFC a sum of US $31,759.89, which is the premium for the first three (3) years' political risk repossession insurance coverage (coverage type LSW147).  If Purchaser exercises the option to purchase described below, and finances a new Citation aircraft utilizing CFC credit facilities (subject to CFC credit approval), any paid but unused LSW147 premium amounts may be transferred to the account of the new Citation.

In consideration for the non-refundable Down Payment and Structuring Fee, CFC hereby grants Purchaser an option to purchase the Aircraft (the "Option"), subject to the Lease, to close on any Monthly Rental Payment Date that is after the twelfth (12th) Regular Monthly Rental Payment, or on the last day of the term of the Lease.  The Option may be exercised by Purchaser upon not less than thirty (30) days prior irrevocable written notice to CFC its address set forth below or such other address as it may from time to time designate in writing.  If this Option is exercised, Purchaser shall, on or before the date of closing (the "Purchase Date"), pay CFC the Exercise Price specified on the Option Price Schedule, attached hereto and incorporated herein by this reference, plus all other sums then due under the Lease, plus all expenses and attorneys' fees incurred by CFC in connection with the exercise of this Option (the Exercise Price plus additional sums, if any, are hereinafter referred to as the "Purchase Option Price").  The Purchase Option Price shall be deposited by Purchaser in immediately available funds (U.S. Dollars only) in a bank account to be designated by CFC in the United States of America, with no deduction or withholdings whatsoever.  CFC, upon receipt of payment of the Purchase Option Price by Purchaser, shall transfer the Aircraft to Purchaser, free and clear of any and

Page 1 of 4



all liens, charges, or encumbrances created by any act or omission of CFC, AS IS, WHERE IS, with no representations or warranties (except as to title), express or implied, except for the Lease if it shall not have been previously terminated or expired and CFC shall assign its rights and obligations under the Lease to Purchaser, without recourse and with no representations or warranties, express or implied. Any applicable sales or other taxes, imposts, duties, charges, fees or the like arising or payable as a result of or in connection with the purchase and sale of the Aircraft shall be paid by Purchaser. Purchaser shall be solely liable for the registration of the Aircraft in its name with the relevant registries and for the payment of any related taxes and fees.

If an event occurs before the purchase of the Aircraft is completed in accordance with this letter, the result of which is the total loss (actual or constructive) of the Aircraft, or damages thereto beyond repair, Purchaser shall not be obligated to purchase and CFC shall not be obligated to sell the Aircraft. If, on the Purchase Date, the Aircraft has been and remains partially damaged, CFC shall, upon payment of the Purchase Option Price, assign to Purchaser its rights under the Lease in connection with the repair of the Aircraft.

Purchaser's rights hereunder may not be assigned without CFC'S prior written consent, which consent will not be unreasonably withheld. Notwithstanding anything herein or in the Lease to the contrary, any assignment by CFC of its interest in the Lease or in the Aircraft shall be subject to the Option.

This letter agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Kansas, USA. Purchaser hereby consents to and subjects itself to the personal jurisdiction of any competent state or federal court in Kansas and agrees that any legal action arising out of or relating to this letter agreement may be instituted before the competent courts, state or federal, located in said state. The foregoing shall not limit CFC'S rights to bring any legal action or proceeding to obtain an attachment or execution of judgment or any other remedy in any appropriate jurisdiction, including in the courts of Brazil.

Kindly indicate your agreement by signing below.

Sincerely,

CESSNA FINANCE CORPORATION

By: _Mary S. Cassil_____
    Name: _Tracy S. Cassil_____
    Title: _Senior VP, International Sales_

AGREED:

Biscayne Key Investments Inc.

By: _____
    Name: Max D. Puyanic
    Title:    President

## ASSIGNMENT OF CONTRACT RIGHTS

BISCAYNE KEY INVESTMENTS, INC. does hereby assign all of its right, title and interest in and to any purchase option and other rights arising out of that certain letter agreement from Cessna Finance Corporation dated October 5, 2000, a copy of which is attached hereto and made a part hereof, to BAYWIND HOLDINGS, INC., a Netherlands Antilles corporation in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration.  In addition to the consideration set forth herein, BAYWIND HOLDINGS, INC does hereby agree to assume all of the duties and responsibilities pursuant to the terms of the letter agreement of October 5, 2000.

IN WITNESS WHEREOF, the parties hereto have executed this agreement this _22_ day of ____March____, 2005.

BISCAYNE KEY INVESTMENTS, INC. a Florida corporation
By:   Max Puyanic, President

_____
(Signature)

BAYWIND HOLDINGS, INC.
By:     Max Puyanic, Attorney-in-Fact

_____
(Signature)



LAW OFFICE OF
# MAX D. PUYANIC

TEL: (305) 361-3600
DIR: (305) 365-2600 x-26

30 WEST MASHTA DR., SUITE 400
KEY BISCAYNE, FL 33149

FAX: (305) 365-0800
maxp@commodorerealty.com

April 18, 2007

Cessna Finance Corporation
220 West Douglas, Suite 300
Wichita, Kansas USA 67201

Re:    Termination of Purchase Agreement Dated October 5, 2000, ("Letter Agreement") for the
Purchase of Cessna: Model 525 Serial No: 525-0403, Registration Mark PT-PRR (the
"Aircraft")

To:    Cessna Finance Corporation

The undersigned, BAYWIND HOLDINGS, INC., located at 30 W. Mashta Dr., Suite 400, Key
Biscayne, Florida 33149, by virtue of the attached Assignment of Contract became the purchaser
of the Aircraft described above. BISCAYNE KEY INVESTMENTS, INC., its predecessor, en-
tered into a Letter Agreement with you under which terms BISCAYNE KEY INVESTMENTS
agreed to purchase the Aircraft pursuant to the terms and conditions set forth in the Letter Agree-
ment. BISCAYNE KEY INVESTMENTS, INC. then subsequently assigned their rights to
BAYWIND HOLDINGS, INC. as a result of the attached document. The Aircraft was then
owned by Cessna Finance Corporation and leased to Remar Administração e Comércio S.A., a
Brazilian company, with head offices in Rodovia Mato Gross do Sul, 395, Km. 6,5 – Sali 1, in
the city of Brasilandia, state of Mato Grosso do Sul, Brazil.

The purpose of this letter is to confirm that the Letter Agreement is hereby terminated and there-
fore null and void. Purchaser hereby waives and disclaims any interest in the aircraft, and to any
structuring fee or down payment described in the letter.

Sincerely,

Baywind Holdings, Inc.
A British Virgin Islands Corporation

By: Max D. Puyanic, attorney in fact


EXHIBIT
D